```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

Success Village Apartments,    :
Inc.                           :
                               :
v.                             :       No.  3:03cv1784 (JBA)
                               :
Amalgamated Local 376,         :
International Union United     :
Automobile Aerospace and       :
Agricultural Implement         :
Workers of America, UAW        :

**Ruling on Application to Vacate Arbitration Award [Doc. # 1];
Cross Motion to Confirm Arbitration Award [Doc. # 9]**

Plaintiff commenced this suit to vacate the Arbitration Award issued in favor of two of its employees represented by the defendant unions, and defendants cross-moved to confirm the award. For the reasons discussed below, plaintiff's application to vacate the Arbitration Award is DENIED, and defendant's motion is GRANTED.

**I.  Background**

Plaintiff Success Village Apartments, Inc. ("Success Village" or "Co-Op") operates a cooperative housing complex consisting of 924 units in ninety-seven buildings located on the Stratford/Bridgeport, Connecticut line. Defendants, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and the affiliated Amalgamated Local 376 (collectively, "Unions"), are unions representing plaintiff's employees in collective bargaining.

1

Success Village and the Unions were parties to a collective bargaining agreement ("CBA") effective from June 1, 1999 through May 31, 2002, which sets forth a grievance procedure by which the parties agreed to settle disputes arising under the agreement.

On December 7, 2001, Dennis Brown and Russell Roscrans, who were employees of Success Village and members of the defendant unions, initiated a grievance under the CBA challenging plaintiff's decision to lay them off.  On June 26, 2002, a panel of arbitrators appointed by the Connecticut State Board of Mediators and Arbitration ("CSBMA") convened a hearing on the grievance, and thereafter issued an award sustaining the grievance and finding that plaintiff violated the CBA by seasonally laying off Dennis Brown and Russell Rosecrans.

Plaintiff now challenges the Arbitration Award on grounds that the arbitrators (1) incorrectly interpreted the CBA, (2) exceeded their authority under the CBA by considering the past practice and policies of plaintiff, and (3) untimely rendered the Arbitration Award.

**II.  Standard**

Tile 9 U.S.C. § 10(a) permits a court to vacate an arbitration award . . . "(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  Because the "federal policy of settling labor disputes by

arbitration would be undermined if courts had the final say on the merits of the awards," United Steelworkers of America v. Enterprise, 363 U.S. 593, 596 (1960), arbitration awards are given a high degree of deference by the courts.  "The principal question for the reviewing court is whether the arbitrator's award draws its essence from the collective bargaining agreement, since the arbitrator is not free merely to dispense his own brand of industrial justice." Saint Mary Home, Inc. v. Service Employees Int'l Union, Dist. 1199, 116 F.3d 41, 44 (2d Cir. 1997)(citations and internal quotation marks omitted). "[A]n arbitration award must be upheld when the arbitrator 'offer[s] even a barely colorable justification for the outcome reached.' The contractual theory of arbitration . . . requires a reviewing court to affirm an award it views as incorrect--even very incorrect--so long as the decision is plausibly grounded in the parties' agreement." Wackenhut Corp. v. Amalgamated Local 515, 126 F.3d 29, 31 (2d Cir. 1997) (quoting Andros Compania Maritima, S.A. v. Marc Rich & Co., 579 F.2d 691, 704 (2d Cir. 1978)). "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." United Steelworkers of America, 363 U.S. at 598.

**III. Discussion**

    **A.  Timeliness of Award**

Section 31-91-44 of the Regulations of Connecticut State Agencies provides that the Arbitration Award "shall be rendered by the panel members within seventy-five (75) days from the date of the final executive panel session held to decide the case." Because the Arbitration Award here was issued on September 19, 2003, over one year after the final executive panel session on September 5, 2002, plaintiff argues that the untimely award must be vacated.

Because "private settlement of a dispute is one of the most desired federal goals," "postaward technical objections by a losing party as a means of avoiding an adverse arbitration decision" are disfavored.  West Rock Lodge No. 2120, International Association of Machinists and Aerospace Workers, AFL-CIO v. Geometric Tool Company, 406 F.2d 284, 286 (2d Cir. 1968).  Thus, in West Rock Lodge, the Second Circuit held that "any limitation upon time in which an arbitrator can render his award [is] directory limitation, not a mandatory one, and that it should always be within a court's discretion to uphold a late award if no objection to the delay has been made prior to the rendition of the award or there is no showing that actual harm to the losing party was caused by the delay."  Id. at 286. Connecticut has similarly interpreted state statutory time

limitations. See American Federation of State, County and Mun. Employees v. City of New Britain, 206 Conn. 465, 468 (1988) (holding that "the plaintiffs' failure to raise the issue of timeliness prior to the issuance of the arbitration award operates as a waiver of their right to assert the lack of timeliness in the board's decision;" and noting that "[w]e have previously concluded that the time limitation in this statute's predecessor was directory and not mandatory," and that "[i]n the absence of a mandatory time limitation [in either the collective bargaining agreement or the submission to the arbitrators], an award of arbitrators may be made within a reasonable time.") (citations and internal quotation marks omitted). As plaintiff has made no showing that it objected to the delay prior to the issuance of the award, nor of actual harm stemming from the delay, there is no basis to set aside the Arbitration Award.

**B.  Merits**

In assessing whether plaintiff's seasonal layoff of two of its employees was unfounded under the CBA, the panel of arbitrators expressly relied on the contract terms governing management discretion (Article 2), hours of work (Article 5), rates of pay (Article 7, Appendix A), and seniority (Article 9). See Arbitration Award [Doc. # 1, Ex. A] at 2. Article 2 of the CBA provides that "except as otherwise provided by this

agreement, the Co-op retains the sole and exclusive right to fully manage and conduct its business affairs," including the right to "lay off for lack of work or other business reason deemed sufficient by the Co-op;" "determine the size of its workforce" and "determine the number of hours per day or per week operations shall be carried on."  Article 5 of the CBA sets forth the hours of work and overtime arrangements for employees, and provides that while "the regular workweek shall consist of five (5) days beginning on Monday and ending on Friday," of eight hours per day, the article "shall not be construed as a guarantee of any hours of work per day, or per week."  Article 9 provides that a "seniority list, including hiring date, job classification and department, shall be maintained, and that "[l]ayoffs shall be made on the basis of seniority."

Construing these provisions, the arbitrators reasoned as follows:

> Although a preponderance of the evidence shows that the Employer had the right to layoff employees for lack of work or other reasons, said language does not explicitly authorize management to engage in seasonal layoffs.  Neither does it prohibit management from laying off employees seasonally.  At first glance the language in Article 2 can reasonably be construed to allow only non seasonal layoffs.  That is what this language has been used for in the course of the last four collective bargaining agreements.  There is no evidence in the record to suggest that the negotiators of the present agreement sought to change this mold.  There is also no evidence to the contrary.  The present management company was not involved in the negotiation of this agreement and offered no insight as to how its present position was developed.

> Arguably the seasonal employee/seasonal layoff contingency was never contemplated by the parties since the contract as a whole makes no provision for seasonal employees in any respect.  Appendix A makes no distinction salary wise for this type of position.  Article 9 does not explicitly address it insofar as seniority computation or recall.  The same is true for Article 3, Union Security.  Arguably not all seasonal employees can become unit members yet this article makes no mention whatsoever of this subject.  The same is true for Article 1 and other sections of the contract.  Since the contract does not specifically provide for this type of layoff, or for this type of position, the language in Article 2 is inherently ambiguous.
>
> In view of this ambiguity, the Panel can "turn to rules of contract construction and parol evidence to determine the contract's meaning."  This means that the ambiguous language must be construed "so as to be compatible with the language in other provisions of the agreement."  The latter approach supports a construction of the Article 2 language in a manner which does not permit the employer to engage in seasonal layoffs since the rest of the contract does not contemplate, accommodate, or explicitly provide for seasonal layoffs or, more importantly, seasonal positions.  The same is true when we consider the evidence and testimony presented insofar as prior enforcement and negotiation of contractual language and prior management uses of the payoff provisions.  All this evidence suggests that Article 2 abridges the Co-op's exclusive and unfettered right to establish seasonal positions unilaterally or to engage in seasonal layoffs in like fashion."

Arbitration Award [Doc. # 1, Ex. A] at 3-5 (footnotes omitted).

The arbitrators' decision was thus clearly grounded in the CBA, and the Court finds no merit to plaintiff's argument that the arbitrators exceeded the authority given to them by the contract.  Article 18, Section 7, which provides that "[n]o prior policy, practice or procedure of the Co-Op shall be continued except for those specifically enumerated in this Agreement," does not by its terms restrict the manner in which the CBA could be

interpreted; it merely prohibits continuation of policies notwithstanding the terms of the CBA.  Therefore, the arbitrators' consideration of whether the CBA changed prior policy was entirely appropriate, given the ambiguity in the agreement and the absence of any parol evidence suggesting the parties' intent on the seasonal layoff issue.  Such a consideration was used merely as one aid in interpreting the CBA in effect.

Moreover, while the arbitration panel did not address the CBA terms on which plaintiff now relies,[1] these provisions fall far short of establishing a clearly entitled right under the CBA to seasonally lay off employees, as would be required for this Court to conclude that the arbitrators "dispensed [their] own brand of industrial justice," United Steelworkers of America v. Enterprise, 363 U.S. at 597, rather than basing their decision on the CBA itself.

---

[1] Section 3 of Article 6 of the CBA states: "In order to be entitled to holiday pay, an employee must have worked on the scheduled workday preceding and following the holiday," with certain exceptions, including, "where the holiday falls within a period of lay-off which does not exceed thirty (30) calendar days."

Section 4 of Article 8 of the CBA provides for the accumulation of paid vacation for an "employee who is laid off, with recall rights, or who is absent due to injury or illness. . . . "

### C. Attorneys' Fees

Defendants' request for an award of costs and attorneys' fees incurred in this action is denied. Generally, "absent statute or enforceable contract, litigants pay their own attorneys' fees." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975). As defendants acknowledge, neither the Labor Management Relations Act nor the parties' collective bargaining agreement entitles a prevailing party to attorneys fees. Although fees may be awarded in rare cases as an exception to the general rule, see id. (noting that "willful disobedience of a court order," or litigation brought "in bad faith, vexatiously, wantonly, or for oppressive reasons" may justify attorneys fees), such exceptional circumstances have not been demonstrated here. While not meritorious, plaintiff's arguments cannot be deemed frivolous.

### IV. Conclusion

For the foregoing reasons, plaintiff's Application to Vacate the Arbitration Award [Doc. # 1] is DENIED, and defendant's Cross Motion to Confirm the Arbitration Award [Doc. # 9] is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
_____
Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 29th day of July, 2005.**

10